**IN RE Fredrick BEACH, Debtor.**

**Emily J. BEACH, Plaintiff,**

**v.**

**Fredrick BEACH, Defendant.**

**Bankruptcy No. 97–30612.**
**Adversary No. 97–7061.**

United States Bankruptcy Court,
D. North Dakota.

Jan. 14, 1998.

**652**

Roger Minch, Fargo, ND, for Plaintiff.

David Johnson, Fargo, ND, for Defendant.

### MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This adversary proceeding was commenced by Complaint filed August 19, 1997, by which the Plaintiff, Emily J. Beach (Emily), seeks a determination that several outstanding debts assumed by the Debtor, Fredrick E. Beach (Fredrick), by virtue of a property settlement agreement, are actually in the nature of alimony, maintenance or support, and therefore nondischargeable under § 523(a)(5) or are otherwise nondischargeable under § 523(a)(15) of the United States Bankruptcy Code.

Trial was held on January 8, 1998. From the evidence presented the court finds the material facts to be as follows:

#### Findings of Fact

On July 18, 1995, after a six-year marriage, the parties entered into a property settlement agreement, the terms of which were incorporated into a divorce decree dissolving their marriage. The settlement agreement did not explicitly provide for alimony, support or maintenance for Emily but did provide that she would receive the parties' mobile home and that Fredrick would become responsible for the monthly payment of $146.00 owing to First Bank. It was also agreed that Fredrick would pay Emily $350 per year commencing October 1, 1995, to cover taxes and insurance on the mobile home, this sum continuing until the mobile home loan was paid off. Additionally, Fredrick agreed to become solely responsible for other marital debts including an outstanding obligation of $3,045 owing Jamestown Hospital.

These obligations have not been paid and in April 1997, Fredrick filed for relief under Chapter 7 of the Bankruptcy Code listing as creditors, First Bank and Jamestown Hospital. A discharge was entered on September 18, 1997.

Emily is presently 41 years of age and suffers from childhood onset diabetes and respiratory problems both of which have caused her considerable medical difficulties over the years and portend worse for the future as she has been told she may eventually need a kidney transplant. Her diabetic

condition causes her to incur substantial medical bills and, as it is a chronic condition likely to worsen, there is nothing to suggest that her medical related expenses will decline in the future. Her education did not go beyond high school. She has worked at a variety of low wage jobs and currently works as a machinist for $6.50 per hour with no overtime. Her present employment, although her sole source of income, provides her with no pension or profit sharing. For the tax year 1996 her total income was $8,263 including $3,220 unemployment. In 1997, her net income was approximately $9,000. Assuming she is able to continue working at her present employment, her net monthly income will be $750. Whether she will be able to continue with her present employment strikes the court as somewhat problematical owing to her health condition as she must stand on her feet ten hours a day, four days a week with only a one-half hour lunch break and several ten minute coffee breaks. Her monthly expenses far exceed her ability to meet them owing principally to her ongoing medical expenses which as pre-existing conditions, are not covered by her employer's health insurance plan. From a review of the monthly expense documents received into evidence, it is apparent that Emily is living an extremely frugal existence. For example-her monthly food budget is $100. It is by no means an exaggeration to conclude from the evidence that it is impossible for her to pay the $146 per month on the outstanding mobile home debt. She is nonetheless struggling to pay Jamestown Hospital $10 per month and is making monthly payments towards the mobile home insurance premium. Taxes on the mobile home of approximately $130 come due on January 10, 1998, but from the evidence it does not appear that her monthly budget will permit payment of this amount.

Fredrick is presently 43 years old and, while not in the best of health, due to back problems and some vision difficulties, is nonetheless able to pursue a full-time career as an over-the-road trucker. He is an owner/operator under contract with a trucking company on a 75/25 basis. His monthly gross income as listed in his bankruptcy Schedule I is $11,000 from which he is responsible for all trucking-related expenses which from Schedule J total $9,000 per month inclusive of living costs on the road of $1,250 per month. In addition to on-the-road living costs, Fredrick rents a home in Ypsilanti, North Dakota for $200 per month together with associated expenses of utilities and heat at $70 per month. In 1997, he occupied this residence for only fifteen days. Otherwise, he was on the road with his present wife who is also a trucker. He also leases a 1996 GMC pickup for $479 per month and makes payments of $215 per month on another personal vehicle. He acknowledges that as with the home, for all but fifteen days a year neither of these vehicles are used. The total of all monthly living expenses inclusive of the above is $11,097.

The mobile home occupied by Emily is a 1991 Detroiter. She has lived in it during her marriage to Fredrick and continues living in it today. At trial she testified that during the property settlement negotiations she did not insist on alimony because Fredrick agreed to pay for the trailer, taxes and insurance. Fredrick professes not to recall any discussions concerning alimony but said he told Emily that she could live in the mobile home as she had nowhere else to live. The mobile home, financed with First Bank, has an outstanding balance against it of $8,503.59 as of April 15, 1997. No payments have been made on this obligation and it is uncertain what the bank's next move will be.

*Conclusions of Law*

1.

Section 523(a)(5) excepts from discharge any debt owed to a former spouse or child of the debtor for alimony to, maintenance for, or support of such spouse when awarded in connection with a "divorce decree or other order of a court of record" if the obligation is "actually in the nature of alimony, maintenance, or support." 11 U.S.C. § 523(a)(5). In contrast, property settlements are dischargeable unless they come within the ambit of § 523(a)(15). Although statutory exceptions to discharge normally are subject to narrow construction, exceptions from discharge for spousal and child support are afforded a more liberal construc-

tion as the policy behind § 523(a)(5) favors enforcement of familial support obligations over a "fresh start" for the debtor. *In re Kline*, 65 F.3d 749 (8th Cir.1995). This court has over the years visited the topic of nondischargeability under § 523(a)(5) on numerous occasions, most recently in the case of *Kubik v. Kubik*, 215 B.R. 595 (Bankr.D.N.D.1997). In that case and its predecessors, the court has said that whether a particular debt is support obligation nondischargeable under § 523(a)(5) or rather a property settlement is a question of federal law to be determined by the substance of the liability rather than its form or how it is characterized in the settlement agreement or the decree. The fact that the decree or underlying property settlement agreement does not contain language expressly creating an alimony or support obligation is irrelevant to the issue. Indeed, the recent case of *In re Tatge*, 212 B.R. 604 (8th Cir. BAP 1997) considered a property settlement agreement that expressly provided that the assumption of mortgage payments could be discharged in bankruptcy in the event the spouse filed bankruptcy. Nonetheless, the bankruptcy court regarded the mortgage obligation as being in the nature of support, a finding that was affirmed on appeal to the Bankruptcy Appellate Panel. It is well settled that the principal consideration in making a determination is the intent of the parties coupled with the function served by the obligation at the time of the divorce. This is a question of fact to be made by the court from a variety of factors. *In re Sateren*, 183 B.R. 576 (Bankr.D.N.D. 1995). Frequently a division of property is employed as a substitute for alimony by providing a means for the disadvantaged spouse to maintain the basics of living. In *Tatge, supra*, the Bankruptcy Appellate Panel, in concluding that an agreement to maintain mortgage payments was in the nature of support, observed that it served the most basic of support functions—that of providing a home for a mother and children which they otherwise could not afford. 212 B.R. at 604. In the same vein, in the case of *Williams v. Williams*, 703 F.2d 1055 (8th Cir.1983) concerning a debtor who, by stipulation, had agreed to pay joint debts owing banks, insurance companies and department stores, the court noted that these debts were incurred to provide basic household necessities and agreeing with the bankruptcy court, found this undertaking to be in the nature of support for bankruptcy purposes.

From the foregoing case law discussion and given the facts of the case at bar, the court has little trouble concluding that the agreement by which Fredrick obligated himself to pay the unpaid balance of the mobile home debt and contribute $350 per year towards related taxes and insurance until the mobile home was paid for, was in the nature of alimony and support. Emily, despite stretching her resources to the limit and working ten hours a day, has not been able to find the means to pay the mobile home debt. Even in the face of an almost certain repossession attempt by the bank, she has been unable to do so and stands in eminent peril of losing the only home she has. Clearly the obligation to maintain the mobile home as her dwelling place was the functional equivalent of support. Fredrick admitted as much when he said she has no where else to live.

Payment of the unpaid obligation owing Jamestown Hospital is not essential to Emily's basic survival needs. From the evidence presented this debt appears to be nothing more than an aging obligation stemming from medical expenses incurred sometime ago. At such, it is not a debt falling within the ambit of § 523(a)(5).

2.

Though not a nondischargeable obligation under § 523(a)(5), Emily nonetheless urges that the unpaid Jamestown Hospital obligation be regarded as nondischargeable under § 523(a)(15), a section which was added to the Code by the Bankruptcy Reform Act of 1994 in an effort to enhance the rights of a non-debtor spouse holding a marital property settlement claim.

Section 523(a)(15)[1] sets up a rebuttable presumption of nondischargeability of

---

1. § 523(a)(15). Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(a), 1328(b), or 1328(b) of this title does not

any property settlement claim arising out of a divorce which is not of the kind covered by § 523(a)(5). Emily's burden is merely to show that she had a divorce-related claim not otherwise covered by § 523(a)(5). Once meeting this rather minimal burden, it becomes for the Debtor to prove either that he has an inability to pay the obligation in the face of his support and essential business obligations or alternatively, to show that discharging the debt would give him a benefit which outweighs the detriment to the former spouse. *In re Straub*, 192 B.R. 522 (Bankr. D.N.D.1996). Under § 523(a)(15) this court has chosen to begin its inquiry with an analysis of a debtor's current financial circumstances and then carry that analysis on into the foreseeable future assessing whether or not during the foreseeable future the debtor would be able to pay the debt from income and property sources unnecessary or nonessential to the maintenance of his family or the operation of his business.

Although Fredrick's monthly income is stretched to the limit by current expenses— those expenses do bespeak of some flexibility. For example, within the monthly trucking-related expenses he has factored in over-the-road living costs of $1,250 inclusive of meals while on the road. This amount works out to $15,000 per year. In addition to this sum, he has figured a monthly food budget of $100 per month working out to $1,200 per year. Between these two figures there is definitely some flexibility since when Fredrick is on the road he cannot be duplicating food expenses already covered by his over-the-road living expenses. Also of some concern is the fact that Fredrick is incurring home rental expenses of $2,400 per year for a home occupied only fifteen days last year. This is hardly representative of someone who is carefully managing his budget. Also of dubious necessity is the $479 per month vehi-

cle lease payment for a vehicle neither essential to his business nor, apparently, of much use for any other reason. Why someone would pay nearly $6,000 on a vehicle that, for all but fifteen days, sits unused is beyond common sense. Elimination of either or both of these unnecessary expenses would easily free up sufficient funds to pay the Jamestown Hospital debt without any burden to Fredrick, particularly in the face of the fact that due to his recent Chapter 7 discharge, he is debt free.

Of paramount importance to the court though is to ensure that the mobile home debt owing First Bank is paid off. Nothing should impair Fredrick's financial ability to pay off that obligation. The court, recognizing the vagrancies of the trucking business, is concerned that requiring Fredrick to pay off the hospital debt may involve funds that would be better used for payment of the mobile home obligation-an obligation that must be significantly reduced if repossession is to be prevented. Both the mobile home-related debt as well as the Jamestown Hospital obligation could be paid if Fredrick eliminated just one of what the court regards as nonessential monthly obligations. However, allowing the discharge of the Jamestown Hospital obligation makes payment of the mobile home-related obligations even more of a budgetary certainty and does not adversely impact Emily as she is, for all practical purposes, judgment proof. The greater risk to her would be the heightened possibility of continuing default by Fredrick on the mobile home-related obligations were he to remain obligated on the Jamestown Hospital obligation as well.

Accordingly, while with some minor adjustment to his budget, Fredrick could probably find the means with which to pay all obli-

discharge an individual debtor from any debt—

\* \* \*

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court record, a determination made in accordance with State or territorial law by a governmental unit unless—
(A) the debtor does not have the ability to pay such debt from income or property of the

debtor not reasonably necessary to be expended for the maintenance or support of the debtor or dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

gations including the Jamestown Hospital debt, the court will not find the Jamestown obligation nondischargeable under § 523(a)(15) in order that the funding source for the mobile home obligation and related insurance and taxes be assured.

### Conclusion

Based upon the foregoing, it is the conclusion of the court that the unpaid and outstanding balance owing First Bank in consequence of the mobile home loan is nondischargeable under section 523(a)(5) and in addition, until said debt is completely paid, the sum of $350 per year owing to the Plaintiff, Emily J. Beach, for taxes and insurance is likewise nondischargeable under section 523(a)(5). The remaining obligation owing Jamestown Hospital is dischargeable for the reasons stated. The debtor, Fredrick E. Beach, shall take immediate steps to reaffirm the obligation owing First Bank and commence making the monthly payments as might be required under such reaffirmation agreement. Further, he shall immediately take steps to see that the taxes and insurance are paid by paying over to Emily Beach the sum of $350 each year commencing with October 1, 1995. In all respects Fredrick E. Beach shall adhere to the terms of the property settlement agreement as it relates to the mobile home debt and the tax and insurance obligations.

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

**SO ORDERED.**