# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

No. 99-6060SI

———

In re:

Louis A. McLain,

    Debtor.

Julie Sue Scholl,

    Plaintiff-Appellant,

        v.

Louis A. McLain,

    Defendant-Appellee.

Appeal from the United States
Bankruptcy Court for the
Southern District of Iowa

———

Submitted: October 29, 1999
Filed: November 30, 1999

———

Before KRESSEL, WILLIAM A. HILL, and DREHER, Bankruptcy Judges.

———

KRESSEL, Bankruptcy Judge.


The debtor, Louis McLain, filed his Chapter 7 petition on December 8, 1998. Julie Scholl, the debtor's ex-wife, filed a complaint to determine the dischargeability of the debtor's debt to her arising from an obligation resulting from their divorce decree. Scholl argued that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(5) because it is in the nature of alimony, support, or maintenance. The bankruptcy court held a trial on the

matter on June 4, 1999, and entered a memorandum of decision and order on July 27, 1999, finding that the debt to Scholl was not in the nature of alimony, support, or maintenance and therefore not excepted from discharge under § 523(a)(5). We reverse.

BACKGROUND

Scholl and the debtor were divorced by a consent decree of dissolution of marriage ordered by the Iowa District Court for Adair County on October 21, 1996. Both parties were represented by counsel in the divorce proceedings. In its findings of fact, the Iowa district court provided that, "[t]he parties have executed a Stipulation which the Court has reviewed and accepted and incorporated herein." Based upon the court's findings of fact, it ordered, adjudged and decreed the terms of the stipulation between the debtor and Scholl and the dissolution of their marriage.

The stipulation provided, among other things, an agreement regarding the payment of child support from the debtor to Scholl:

> 4. Louis shall pay the sum of $425.00 per month for the support of the minor children, Luke Austin McLain and Jacob Sawyer McLain. The first ½ of the child support payment is due October 1, 1996, and the second ½ is due October 15, 1996, and thereafter on the 1st and 15th day of each succeeding month until the support obligation terminates. Said support payments are to be paid through the Adair County Clerk of Court, or through the Collection Service Center in Des Moines, Iowa. Said support payments shall continue until the children shall (1) complete their high school education or attain the age of eighteen (18) years, whichever shall occur later, or (2) marry, enter the armed forces or become otherwise emancipated, whichever of these two sets of circumstances first occurs. However, said support shall continue pursuant to the provisions of Chapter 598.1(2) of the Code of Iowa provided said children are in school as provided by said Code Section. Any party required to make support payments is hereby notified of the Immediate Income Withholding Provisions of Chapter 252D.8 of the Code of Iowa. Such party is advised that in a support order issued or modified on or after January 1, 1994, whether services are being provided by the Child Support Recovery Unit or not, the income of a

support obligor is subject to withholding, on the effective date of the Order, regardless of whether support payments by the obligor are in arrears. The Child Support Recovery Unit or this Court may enter an Order simultaneously with this Order for an immediate withholding of income. The specified sum shall be deducted from obligor's earning, trust income, or other income sufficient to pay the support obligation. The amount withheld pursuant to an assignment of income shall not exceed the amount specified in 15 U.S.C. 1673(b). The child support amount is less than the Child Support Guidelines currently in effect for the reasons set forth in Paragraphs 10 and 12 hereof.

(Emphasis added).

Paragraph 10 of the stipulation provides:

10. Louis and Julie shall be liable in the amount set forth below for the following debts in the approximate amounts listed:

| | |
|---|---|
| (a) Merchants Bank | $ 153.55 |
| (b) Choice VISA | $ 2,083.04 |
| (c) Advanta | $ 2,610.00 |
| (d) ATT Universal Card | $ 1,534.00 |
| (e) Mastercard | $ 980.00 |
| (f) BB&T | $ 1,750.00 |
| (g) MBNA | $ 1,900.00 |
| TOTAL | $ 11,010.59 |

Louis shall pay $230.64 per month to Julie, by wage assignment, for his share of the abovementioned debts beginning October 15, 1996 and continuing thereafter on the 15th day of each succeeding month until the 15th day of September, 1999 at which time his obligation shall cease and Julie shall be fully responsible for any unpaid balances on the above debts. Louis agrees to notify his current employer of this arrangement as well as any subsequent employer and provide for the wage assignment effective October 15, 1996. If Louis fails to pay this amount, Julie shall have a judgment against Louis for $7,200.00 plus interest at the rate of 9.5% per annum beginning October 15, 1996, less credit for any payments made. As long as Louis makes his monthly payment of $230.64, Julie shall be responsible for paying the above

3

creditors and shall hold Louis harmless from any further liability thereon. <u>This obligation from Louis to Julie shall be considered a nondischargeable support obligation under 11 U.S.C. 523(A)(5).</u>

(Emphasis added).

Paragraph 12 of the stipulation provides:

12.    Louis shall maintain health insurance coverage on the minor children of the parties, and Louis shall pay ½ of the uncovered medical costs, including dental and optical costs. <u>Again</u>, Louis' obligation to maintain health insurance and pay ½ of the uncovered medical costs and ½ of the dental and optical costs is an <u>integral part of this Court Order concerning child support. These obligations as well as the child support obligation of $425.00 per month should be considered nondischargeable child support obligations under 11 U.S.C. 523(A)(5)</u>.

(Emphasis added).

The Iowa district court expressly reviewed and accepted the stipulation between the debtor and Scholl and incorporated the stipulation into the court order and decree of dissolution. Its order contained provisions identical to paragraphs 4, 10, and 12 of the stipulation.

The debtor made many of the monthly $230.64 payments to Scholl for his liability on the mutual credit card debts according to the terms of paragraph 10 for a total of $4,459.00. Based on the 9.5% amortized schedule of those payments as ordered by the state court, the debtor still owed Scholl $3,843.96 as of December 9, 1998, the date that the debtor filed his Chapter 7 petition.

The debtor was granted his discharge on March 10, 1999. Scholl filed a complaint arguing that the debtor's debt to her under paragraph 10 is a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(5). The bankruptcy court entered judgment in favor of the debtor and Scholl appeals.

4

DISCUSSION

We review the bankruptcy court's legal determinations de novo and its factual findings for clear error. See Yankton Sioux Tribe v. Gaffey, 188 F.3d 1010, 1015 (8th Cir. 1999); Alexander v. Jensen-Carter, 239 B.R. 911, 913 (B.A.P. 8th Cir. 1999). In particular, whether a debt arising out of a dissolution of marriage constitutes an award of alimony, support, or maintenance for purposes of § 523(a)(5) is a question of fact subject to review under the clearly erroneous standard. See Holliday v. Kline (In re Kline), 65 F.3d 749, 750 (8th Cir. 1995); Morel v. Morel (In re Morel), 983 F.2d 104, 105 (8th Cir. 1992).

Section 523(a)(5) provides:

    (a)    A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt —

        (5)    to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement, but not to the extent that –

            (B)    such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5). "Thus, under § 523(a)(5), a debt that is 'actually in the nature of alimony, maintenance or support of a spouse, former spouse, or child of the debtor' is nondischargeable in bankruptcy." Moeder v. Moeder (In re Moeder), 220 B.R. 52, 54 (B.A.P. 8th Cir. 1998). It is the actual nature of a debt, not its label, which determines whether it is dischargeable or not. Scholl bears the burden of proof on this issue. See Grogan v. Garner, 498 U.S. 279, 287 (1991), cited in In re Shea, 221 B.R. 491, 497 (Bankr. D. Minn. 1998).

5

Whether a particular debt constitutes a maintenance or support obligation is governed by federal bankruptcy law, not by state law. See Tatge v. Tatge (In re Tatge), 212 B.R. 604, 608 (B.A.P. 8th Cir. 1997), citing Williams v. Williams (In re Williams), 703 F.2d 1055, 1056 (8th Cir. 1983). A state law or divorce decree that characterizes a debt as a support obligation is not binding upon bankruptcy courts. See Adams v. Zentz, 963 F.2d 197, 199 (8th Cir. 1992), citing Williams, 703 F.2d at 1057. Conversely, the fact that a divorce decree or stipulation does not call an obligation alimony, support, or maintenance does not prevent a bankruptcy court from finding it to be so.

In Boyle v Donovan, 724 F.2d 681, 682-83 (8th Cir. 1984), the debtor had promised, as part of a property settlement agreement incorporated into his divorce decree, to pay all college and professional school education expenses for his two minor children. Years later, he became delinquent in the payments and his ex-wife was awarded a state court judgment on the debt. The debtor filed bankruptcy and sought to have the debt discharged. The Eighth Circuit, affirming the bankruptcy court's determination that the college expenses constituted support within the meaning of § 523(a)(5), held that "the crucial question is what function did the parties intend the agreement to serve when they entered into it." Id. at 683.

"In deciding whether to characterize an award as maintenance or support 'the crucial issue is the function the award was intended to serve.'" Adams, 963 F.2d at 200. "The crucial issue in making this determination is the intent of the parties and the function the award was intended to serve at the time of the divorce." Moeder, 220 B.R. at 55 (citations omitted).[1]

The reviewing court may not "reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." See Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 573 (1985). Rather, a finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire

---

[1] In Tatge, 212 B.R. at 608, we indicated a number of factors that may be helpful in determining whether an award arising out of a marital dissolution was intended to serve as an award for alimony, maintenance or support. See also Moeder, 200 B.R. at 55. In this case there is very little evidence in the record bearing on many of these factors.

evidence is left with the definite and firm conviction that a mistake has been committed." See United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948), cited in Adams, 963 F.2d at 200.

In this case, the state court's intent and the parties' intent at the time of the divorce is patent from the record and there is no evidence sufficient to overcome that plain clarity. The state court specifically adopted the dissolution stipulation entered into by the debtor and Scholl, and made the provisions of the stipulation its own findings and order. There is no reason to suspect that the state court did so lightly or without careful consideration. There is, moreover, no reason to conclude that the state court possessed any intentions other than those enumerated by the express terms of its order and the stipulation. The terms are unambiguous, the words not uncertain. The state court's order identified the provisions of paragraphs 4, 10, and 12 as support obligations. That the court intended paragraphs 10 and 12 to order support is manifest by the clear language therein. "This obligation from Louis to Julie shall be considered a nondischargeable support obligation." "Again," the state court decrees, "Louis' obligation to maintain health insurance and pay ½ of the uncovered medical costs and ½ of the dental and optical costs is an integral part of this Court Order concerning child support."

While the language of the decree and the stipulation *labeling* the paragraph 10 obligation as support is not determinative, the language unequivocally demonstrates the parties' and the state court's intention that the obligation was intended to provide child support and clearly serves as such. The plain language that compels the conclusion that the parties intended the obligation to constitute a support obligation is the use of words that describe the contemplated exchange of obligations for the purposes of ensuring Scholl would have the means necessary to adequately support the children. The stipulation and order unequivocally represent that the debtor will pay some of the credit card debt because he will contribute less formal child support than the child support guidelines would otherwise require. The debtor's contribution to the health care expenses of the children are also clearly in exchange for smaller child support payments. The state court expressly characterized the debtor's obligations on the credit card debt and health care expenses as an "integral part" of the court's order "concerning child support."

7

In addition to the fact that the state court's order demonstrates that its intent and the intent of the debtor and Scholl was that the obligations ordered by paragraphs 4, 10, and 12 were to provide support, those obligations do, in fact, constitute support for the two minor children. That the bargained for exchange of more money paid by the debtor on the credit card debt now in return for a shortfall of child support under the guidelines later ultimately results in a long-term shortfall of support is of no moment. The parties agreed, and the state court ordered, a certain set of support obligations. The exchange does not make them less in the nature of support. The debtor's payment on the credit card debt frees Scholl's income for her to have more funds available to support their children. The "shortfall" in the future was a decision that Scholl and apparently the state court regarded as a superior arrangement than no payments or smaller payments by the debtor on the credit card debt, due in some certain sums at the time of the divorce and in the short-term thereafter.

The state court's departure from the child support guidelines is also of no consequence. The guidelines are simply that: guidelines. The state court was free to deviate and apparently did so, and not without an arguably compelling basis, the exchange of more support now for less support later. See Iowa Code § 598.21(4) (that the guidelines determine the proper amount of support is a rebuttable presumption and that amount may be adjusted upward or downward if the court finds such adjustment necessary); State ex rel. Miles v. Minar, 540 N.W.2d 462 (Iowa App. 1995) (child support guidelines are not unassailable and may be adjusted as necessary depending on the needs of the children, to achieve justice between the parties, or in light of other circumstances).

The only evidence which contradicted the overwhelming evidence that the parties and the court intended these obligations to constitute support was the debtor's brief, conclusory, and self serving statement at trial which directly contradicted his stipulation. See Farm Credit Services v. Heine Feedlot Co. (In re Heine Feedlot Co.), 107 F.3d 622, 624-25 (8th Cir. 1997) (discussing parol evidence in bankruptcy litigation). Under Iowa law, extrinsic evidence may "aid interpretation when it throws light on the situation of the parties, antecedent negotiations, the attendant circumstances, and the objects they were striving to attain," and to "ascertain a writing's actual significance," but it may not be considered "for the purpose of changing it." See Fed. Deposit Ins. Corp. v. Mount Pleasant Prof'l Bldg. (In

re Mount Pleasant Bank & Trust Co.), 426 N.W.2d 126, 133-34 (Iowa 1988) (citations omitted).

"Construing a contract of debatable meaning by resorting to surrounding and antecedent circumstances and negotiations for light as to the meaning of the words used is never a violation of the parol evidence rule." Id. at 134. However, the writing at issue in this case, the state court divorce decree (and the parties' stipulation underlying the state court's decree), is not of debatable meaning. We think there is simply one meaning to be given to paragraphs 4, 10, and 12, and that is its plain meaning: "The child support amount is less than the Child Support Guidelines currently in effect for the reasons set forth in Paragraphs 10 and 12 hereof."

In other words, the debtor's child support obligation is less because he agreed to be obligated on credit card debt and medical expenses. The parties exchanged one type of support for another. It is a matter of distribution of money for support purposes and not a matter of whether or not the debtor's obligations under those paragraphs constitute support. The exchange was clearly contemplated and clearly identified. The language being unambiguous, there was no reason to give undue consideration to the debtor's testimony as to what he thought the language meant or what he and Scholl did or did not intend it to mean. The agreement leaves no question as to the parties' intentions. The debtor and Scholl intended that the debtor's obligation under paragraph 10 constituted support. Because the debtor's obligation on the credit card debts was meant to constitute support, and because it is, in reality, in the nature of support, it is nondischargeable. We conclude that the bankruptcy court's contrary finding is clearly erroneous.

CONCLUSION

The debtor's obligation under the Iowa state divorce decree to make payments to Scholl according to the terms of paragraph 10 of the parties' stipulation and the state court's order is in the nature of support for purposes of § 523(a)(5) and is therefore excepted from the debtor's discharge. The decision of the bankruptcy court is reversed.

9

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.