**In re Myron E. KOPP, Debtor.**

**Ardella Stein, f/k/a Ardella Kopp, Plaintiff,**

v.

**Myron E. Kopp, Defendant.**

**Bankruptcy No. 00–30261.
Adversary No. 00–7029.**

United States Bankruptcy Court,
D. North Dakota.

Oct. 17, 2000.

---

Irvin B. Nodland, Bismarck, ND, for plaintiff.

Benjamin C. Pulkrabek, Mandan, ND, for defendant.

### MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

By Complaint filed May 11, 2000, the Plaintiff, Ardella Stein ("Ardella"), seeks a determination that outstanding marital debts to have been assumed by the Debtor, Myron Kopp ("Myron"), by virtue of a court ordered property division are nondischargeable pursuant to section 523(a)(15) of the United States Bankruptcy Code. Myron concedes the obligations originally totaling $97,233.00 were assigned to him by the divorce judgment but asserts that in the face of other financial responsibilities, he does not have the ability to pay them. Waiving trial, the parties agreed to submit the case upon affidavit and exhibits. The Court, in consideration of the materials submitted, makes the following findings of fact:

*Findings of Fact*

1.

Ardella and Myron, after a thirteen year marriage, marred by family difficulties, were granted a Decree of Divorce by the North Dakota State District Court for Burleigh County on December 15, 1999 (Civil No. 99–C2642). During the course of trial the state court took evidence bearing upon the employment, income and parenting skills of the parties and made a division of marital property, marital debts, and, while initially making no provision for spousal support or alimony, did impress Myron with a child support obligation of $526.00 per month.

Relying upon the property and debt schedules provided pursuant to Rule 8.3 of the North Dakota Rules of Court, and the factors set forth in *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952) and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966), the state court made a division of marital assets and debts. The couples total marital indebtedness was found to be $195,147.00 with Myron assigned $97,961.00 consisting of credit card debt of $27,000.00, a pickup loan balance of $10,706.00 and $55,824.00 remaining on a motor home. Each party was directed to indemnify and hold the other harmless as to the obligations assumed. The pickup and motor home were

awarded to Myron with instructions that the motor home be sold to reduce the indebtedness against it.

The state court in making its determination gave consideration to the parties' employment situation and income. At the time of their divorce, Myron was employed with the State of North Dakota Department of Human Services as a disability analyst earning a net monthly income of $1,678.00. In addition, he received a monthly veteran's disability pension of $182.00 bringing his total net monthly income to $1,860.00. Schedule I, filed with his bankruptcy petition, reveals that as of the date of the bankruptcy his net income from employment remains at $1,661.00. However, Schedule I reflects a monthly disability payment of $288.00 bringing his total net monthly income to $1,949.00 as of petition date.

Ardella at the time of the divorce maintained a home day care facility which the state court found netted her approximately $13,000.00 per year.

In the wake of the divorce judgment, Myron, convinced their financial situation remained as desperate as before, filed for relief under Chapter 7 of the Bankruptcy Code on February 28, 2000. Included as debts to be discharged were the remaining balances on the motor home and the credit card obligations which had been ordered assumed by the state court. The schedules indicate the motor home is to be surrendered. This has apparently occurred because Ardella, in her affidavit, indicates the motor home was repossessed leaving an unsatisfied deficiency of $24,-784.00. The pickup was to be retained by Myron and the remaining debt taken care of.

Chagrined over this turn of events and finding herself dunned by the credit card companies as well as the credit union, Ardella went back to state court which in consequence of her likely responsibility for all the marital debts, amended its judgment to include an award of spousal support in the sum of $300.00 per month.

Additionally, the state court adjusted the property division by awarding Ardella the cash value of two life insurance policies worth $3,905.00, an IRA worth $1,619.00, and Myron's state retirement of $10,-274.00. (These figures are taken from the Rule 8.3 statement.) An amended judgment reflecting these modifications was entered on April 25, 2000.

2.

Myron is 53 years old and Ardella is 49. Presumably both are in good health, aside from Myron's alcohol problem as noted by the state court. Nothing in evidence suggests there to be any significant improvement in the income of either nor is there anything to suggest either is about to experience a diminishment of income. According to bankruptcy Schedules I and J, Myron's net monthly income of $1,949.37 is reduced by child support of $527.00 per month and spousal support of $300.00 per month, leaving him $1,122.00 per month with which to provide for his necessary living expenses which, inclusive of the $270 per month payment on the pickup, total $1,074.50. A review of Schedule J suggests his living expenses to be very minimal if not, in fact, understated. For example, his monthly food expense is listed at $100.00, and clothing listed at $25.00. Fifty dollars per month has been set aside for "recreation, clubs, entertainment, newspapers, magazines" and $50.00 per month for phone service. There is nothing in Schedule J suggestive of a lavish lifestyle. Submitted into evidence are Myron's check book registers for the nineteen month period between November 12, 1998, and June 23, 2000. These registers show that over this period of time Myron spent $550.00 in liquor stores, $1,570.00 on cigarettes, and $380.00 at the American Legion, the VFW and AmVets. The registers also show total cell phone charges of $878.00. Averaged over the nineteen month span of time these expenditures average out to be $29.00 per month on liquor, $82.00 per month on cigarettes, and $20 per month at the fraternal clubs, for a total average

monthly expenditure of $130.00 on such things.

The average monthly cellular phone expenditure is consistent with Schedule J's indicated monthly phone expense.

According to Myron, the aggregate monthly payments due on the credit card debt assigned to him is $4,909.00. Payments on the $24,784.00 motor home deficiency would be in addition to this. Myron, pointing to his monthly income, reduced as it is by support obligations, states it is simply a financial impossibility for him to make minimum payments to these creditors and at the same time take care of himself as well as meet his support obligations.

Ardella's monthly income from her employment is approximately $1,000.00. The child support and spousal support bring her monthly income to $1,826.00. No information was provided regarding her family's living expenses. However, in addition to her living expenses she remains obligated on her share of the state court debt division totaling $97,186.00 plus those assigned to Myron now totaling $52,515.00 (inclusive of the $24,784.00 motor home deficiency). Recently Capital Credit Union has sued her for the deficiency.

She states that the entire situation as it has played out since the divorce has placed her and the children in an extremely difficult financial situation.

### Conclusions of Law

Section 523(a)(15) excepts from discharge those debts arising out of marital dissolution proceedings that do not constitute nondischargeable alimony, maintenance, or support under section 523(a)(5).

**§ 523. Exceptions to discharge.**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(15) * not of the kind described in paragraph (5) that is incurred by the debtor

in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

.    .    .    .    .

■ The foregoing provision creates a rebuttable presumption of nondischargeability for divorce created obligations of the kind we are concerned with in the instant proceeding. As Debtor, Myron carries the burden of proving that one of the exceptions to nondischarge applies in the instant situation. That is to say, that to escape automatic nondischargeability the evidence must satisfy either section 523(a)(15)(A) or (B). To escape nondischarge the evidence must show either that Myron has an inability to pay the remaining $52,515.00 in the face of his basic living necessities and support obligations or, alternatively, that discharging these obligations would provide him a benefit that outweighs the detriment caused Ardella. *See generally In re Moeder,* 220 B.R. 52 (8th Cir. BAP 1998); *In re Beach,* 220 B.R. 651 (Bankr.D.N.D.1998); *In re Straub,* 192 B.R. 522 (Bankr.D.N.D.1996).

■ At the outset it is safe to say that both of the parties are just scraping by financially. Neither one has the ability either presently or quite likely in the fu-

ture to manage either jointly or singly the overwhelming debt that was apportioned between them by the state court. Nothing presented in the course of this adversary proceeding suggests that either of them will suddenly experience a change in financial position affording them the means to take care of their respective apportioned obligation.

Turning specifically to Myron's situation as must be done under section 523(a)(15)(A), the Court has noted in the Findings of Fact it does not see any budgetary excess which could be characterized as truly discretionary funds. Ardella, with understandable vitriol, points to Myron's liquor and cigarette expenditures as suggestive of an ability on his part to pay the credit cards and deficiency obligations. His financial reality, however, drawn from Schedules I and J, show him with $1,122.00 available each month for living expenses. The living expenses set forth in Schedule J are so parsimonious as to be unrealistic in this Court's view. Total scheduled living expenses are $1,074.00 which on its face would leave $48.00 unallocated each month. However, as before noted, several expenses strike the Court as understated such as food at $100.00 per month and clothing at $25.00 per month. While the facts show that over a nineteen month period Myron has spent an average of $130.00 per month on cigarettes, the VFW, and liquor, his net monthly income of $1,122.00 simply does not have a discretionary capacity for these things unless money is drawn away from other essential budgetary areas such as clothing, food, shelter, or transportation. Finding $130.00 per month to be nonessential and adding it to the unallocated $48.00 would require a forced reduction in a monthly budget that the Court regards as already shaved to the bone. Moreover, were this done and Myron's legitimate monthly expenses reduced to $950.00, there still would be insufficient funds available to make much of a dent in the $52,515.00. Of greater concern to the Court, though, is the very real possibility that as the parsi-

monious nature of his living expenses proves itself out over the course of time, Myron would find himself increasingly unable to both take care of himself and meet the monthly support obligation of $827.00. Faced with a choice, it is entirely possible he would choose to eat rather than make payments on the nondischarged debt or on the support obligation.

### Conclusion

For the foregoing reasons and in consideration of the evidence presented, the Court concludes that the Debtor, Myron Kopp, has met his burden of proof under section 523(a)(15)(A) and accordingly, the obligation remaining outstanding in consequence of the divorce decree totaling $52,515.00 is dischargeable in bankruptcy consistent with section 523(a)(15)(A).

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**