**In re Kenneth B. HOGGARTH, Debtor.**

**Patricia A. Hoggarth, Plaintiff,**

v.

**Kenneth B. Hoggarth, Defendant.**

**Bankruptcy No. 02–30999.**
**Adversary No. 03–7025.**

United States Bankruptcy Court,
D. North Dakota.

Oct. 28, 2003.

Jay D. Carlson, Ohnstad Twichell P.C., Fargo, ND, for Debtor/Defendant.

Gene W. Doeling, Fargo, ND, for Trustee.

Jean P. Hannig, Hannig & Associates, P.A., Fargo, ND, for Plaintiff.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Plaintiff Patricia A. Hoggarth commenced this adversary proceeding by Complaint filed April 23, 2003, seeking a determination that obligations of Debtor–Defendant Kenneth B. Hoggarth stemming from a judgment and decree entered in the parties' divorce is nondischargeable under 11 U.S.C. § 523(a)(5) and (15). She further seeks the imposition of a constructive trust upon the Debtor's interest in Hoggarth Bros., a business entity owned by the Debtor and his three brothers. By Answer filed May 23, 2003, the Debtor seeks a determination that the obligations are dischargeable because repayment would impose a hardship on the Debtor.[1]

Trial was held on September 3, 2003. From the evidence presented, the Court finds the material facts to be as follows:

## FINDINGS OF FACT

On July 21, 1999, after 27 years of marriage, the parties divorced. The divorce judgment requires the Debtor to pay Patricia Hoggarth $1,000.00 per month as spousal support for 60 months. The judgment further requires the Debtor to pay Patricia Hoggarth a total of $357,728.92 as a division of marital assets. Four installment payments totaling $100,000.00 were to be made, and the remaining $257,728.92 was to be paid over a period of ten years through monthly payments of $3,260.11 to be paid beginning September 1999. The asset division obligation to Patricia Hoggarth was secured by the Debtor's shares of stock in Wimbledon Grain Company. Further, the Debtor was required to have Patricia Hoggarth named as the primary beneficiary on his life insurance policy to secure payment of any outstanding balance due and owing on the asset division award.

When the parties married, Patricia Hoggarth was 19 years old and had a high school education. She testified that during the marriage, she was not allowed to work outside the home; rather, her role was to raise the parties' three children, keep the home front going, help on the farm, and cook for the hired men. She also helped with the businesses the Debtor was involved in with his brothers, including a resort, a farming and ranching operation, and a grain elevator. Patricia Hoggarth was not paid for her role in these businesses.

Hoggarth Bros. owned the marital home at the time of the divorce and paid the household expenses, including groceries

---

1. The Debtor also asserts in his Complaint that Patricia Hoggarth's claim is time barred. This issue has been resolved in favor of Patricia Hoggarth by Order dated August 29, 2003, and will not be further addressed.

and home furnishings among others, until the last years of the marriage. The cars that the parties drove were also owned by Hoggarth Bros. Patricia Hoggarth testified that the only property she owned was her clothing and horses that she bred, raised and trained.

During the marriage, in 1992, Patricia Hoggarth was injured in a horse riding accident that required reconstructive leg surgery. Since the accident, she has endured constant pain and takes daily medications. She was diagnosed with diabetes in 2000 and takes daily medications for this condition. She also suffers from fibromyalgia resulting from the stress of the parties' marital problems. She testified that her health will not allow her to work full time, nor to work part time and attend school part time.

After the divorce, Patricia Hoggarth received a $100,000.00 lump-sum property payment. She also received the monthly spousal support and asset division payments, but testified that the Debtor stopped making payments to her in January 2002. On cross examination, she conceded that the Debtor may have made payments through March 2002, but her records admitted into evidence indicate payment through December 2001. Patricia Hoggarth initiated enforcement proceedings in state court in April 2002, and the matter was heard on June 28, 2002. The Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on June 28, 2002.[2] On July 29, 2002, the state court ordered judgment in the amount of $4,500.00 for unpaid spousal support. All other issues were suspended by the filing of the Debtor's bankruptcy petition.

The Debtor is 62 years old and has a high school education. Over the past 40 years, he has held primarily farming-related jobs, and he currently works part time for two farmers on an hourly basis earning between $200.00 and $300.00 per month. He recently began receiving social security benefits in the monthly amount of $849.00. He testified that he is looking for other jobs. For the last two or three years, he has suffered from high blood pressure, shingles and diabetes.

## CONCLUSIONS OF LAW

Section 523(a)(5) of the Bankruptcy Code excepts from discharge a debtor's obligation to make alimony, maintenance, or support payments to a former spouse. 11 U.S.C. § 523(a)(5). Whether a particular debt is a support obligation or is part of a property settlement is a question of federal bankruptcy law. *Scholl v. McLain* (*In re McLain*), 241 B.R. 415, 418 (8th Cir. BAP 1999); *Beach v. Beach* (*In re Beach*), 220 B.R. 651, 654 (Bankr. D.N.D.1998). While exceptions to discharge are generally construed narrowly in order to give effect to the goal of the fresh start of the debtor, the exceptions from discharge for spousal support are given a more liberal construction, and the policy considerations underlying section 523(a)(5) favor enforcement of support obligations over a debtor's fresh start. *Williams v. Kemp* (*In re Kemp*), 242 B.R. 178, 181 (8th Cir. BAP 1999); *Beach*, 220 B.R. at 653–54. Whether a debt arising out of a dissolution of marriage constitutes an award of alimony, support, or maintenance for purposes of section 523(a)(5) is a question of fact. *McLain*, 241 B.R. at 418; *Beach*, 220 B.R. at 654.

The fact that a divorce decree or stipulation does not call an obligation alimony, support, or maintenance does not prevent a finding that it is such because it

**2.** On January 8, 2003, his case was converted to a case under Chapter 7.

is the actual nature of a debt, not its label, that determines whether it is dischargeable. *McLain*, 241 B.R. at 418; *Beach*, 220 B.R. at 654. The crucial issue in making the determination is the intent of the parties and the function the award was intended to serve. *Tatge v. Tatge (In re Tatge)*, 212 B.R. 604, 608 (8th Cir. BAP 1997) (citing *Holliday v. Kline (In re Kline)*, 65 F.3d 749, 751 (8th Cir.1995); *Adams v. Zentz*, 963 F.2d 197, 200 (8th Cir.1992); *Boyle v. Donovan* 724 F.2d 681, 683 (8th Cir.1984); *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1056 (8th Cir.1983)); *Beach*, 220 B.R. at 654. If the function of an obligation is not obvious from the language of the separation agreement or divorce decree, then it is appropriate for the court to examine the circumstances surrounding the creation of the obligation. *McConnell v. McConnell (In re McConnell)*, 88 B.R. 218, 221 (Bankr. D.N.D.1988). Factors to consider in determining whether a debt was intended to serve as an award for alimony, maintenance, or support, or whether it was intended to serve as a property settlement include, but are not limited to:

> the relative financial conditions of the parties at the time of the divorce; the respective employment histories and prospects for financial support; the fact that one party or another receives the marital property; the periodic nature of the payments; and whether it would be difficult for the former spouse and children to subsist without the payments.

*Moeder v. Moeder (In re Moeder)*, 220 B.R. 52, 55 (8th Cir. BAP 1998); *see Anderson v. Anderson (In re Anderson)*, 62 B.R. 448, 457 (Bankr.D.Minn.1986) (stating that special emphasis is placed on the facial language of the settlement agreement or divorce decree when considering all the factors). Irrelevant to such inquiry are the parties' circumstances subsequent to entry of the divorce decree. *In re McConnell*, 88 B.R. at 221.

■ First, there is no question that the nature of the $1,000.00 monthly spousal support obligation is to provide support to Patricia Hoggarth. As such, it is nondischargeable under section 523(a)(5), and the Debtor's assertion that payment of this obligation creates a hardship for him is wholly irrelevant to this determination.

■ Next it is appropriate to consider the nature of the monthly asset division payments and the function that award was to serve. Patricia Hoggarth asserts that the state court determined the amount of the spousal support payments based on the fact that she also received asset division payments from the Debtor, suggesting that the asset division payments were intended to provide for her support and maintenance needs above and beyond the spousal support payments. Although the divorce judgment does not expressly say this, the memorandum opinion entered by the state court on June 2, 1999, discusses the guidelines utilized in determining the equitable distribution of the marital estate and states: "None of Ms. Hoggarth's maladies appear to be immediately life threatening and with the award of marital assets and rehabilitative spousal support the Court will award Ms. Hoggarth should be able to improve her financial prospects over the next several years." This statement by the state court, standing alone, is insufficient to show that it intended the asset division payments to function as support. It is therefore appropriate to evaluate the circumstances surrounding the creation of the obligation through consideration of the factors enunciated above. *See id.; In re Moeder*, 220 B.R. at 55.

■ At the time of the divorce, the financial condition of the parties was disparate. Patricia Hoggarth never received any income or other employment benefits

for her role in the household or the Debtor's business ventures, and she testified that essentially the only asset she had was her horses. Throughout the parties' 27-year marriage, Patricia Hoggarth was financially dependent upon the Debtor and his business interests for her subsistence. When the marriage ended, Patricia Hoggarth did not have any significant financial resources to support herself except her interest in the marital property, and consideration of this factor suggests the property division was intended to provide her with maintenance and support.

■ The respective employment histories and prospects for financial support similarly supports such a finding. Patricia Hoggarth was married at age 19. She testified that she was not allowed to work outside the home because she was expected to raise the parties' three children, keep the home front going, help on the farm, and cook for the hired men. Although she also helped with the other businesses the Debtor was involved in with his brothers, including a resort, a farming and ranching operation and a grain elevator, she was never formally employed by them and received neither retirement benefits nor credit toward social security eligibility. Both parties have only a high school education, but the Debtor had worked in various farming-related positions for 40 years. Although both parties have health problems, nearly all of them began subsequent to the divorce in July 1999 and therefore are not relevant to the consideration of the parties' prospects for financial support at the time of the divorce. *See In re McConnell,* 88 B.R. at 221. The Debtor testified that his health problems—high blood pressure, shingles and diabetes—began two or three years ago. Similarly, Patricia Hoggarth's diabetes was diagnosed in 2000. Patricia Hoggarth testified that her fibromyalgia resulted from the stress of the parties' marriage problems, but she did not say that she had been diagnosed with fibromyalgia at the time of the divorce and it therefore cannot not be considered. The evidence is clear, however, that Patricia Hoggarth's leg injury and resulting chronic pain did exist at the time of the divorce and further limited her employment prospects due to physical restrictions. These facts, combined with the state court's conclusion that the award of marital assets and rehabilitative spousal support should allow Patricia Hoggarth to improve her financial prospects, leads this Court to the conclusion that consideration of this factor strongly suggests the state court's determination of the marital asset division was intended to provide maintenance and support to Patricia Hoggarth.

■ The remaining factors to consider require little analysis in this case. The evidence does not support a conclusion that either party received a disproportionate amount of the marital property and this factor therefore does not weigh significantly into consideration. The asset division payments at issue were to be paid monthly, and the periodic nature of these payments also supports a finding that they were intended by the state court to provide support and maintenance. Finally, upon consideration of Patricia Hoggarth's health, earning capacity, education and other circumstances, it would have been very difficult for Patricia Hoggarth to subsist without the asset division payments at the time of the divorce. Upon consideration of all of these factors, the Court finds that the asset division payments were intended to provide support or maintenance for Patricia Hoggarth, and the obligation is therefore nondischargeable under section 523(a)(5). Because section 523(a)(15) applies only to debts not otherwise found to be in the nature of support or maintenance, it is unnecessary to address Patricia

**328**

Hoggarth's section 523(a)(15) arguments. *See Kubik v. Kubik (In re Kubik)*, 215 B.R. 595, 600 (Bankr.D.N.D.1997).

 Patricia Hoggarth next asserts that the state court intended her interest in the asset division payments to be secured by the Debtor's interest as a shareholder in Wimbledon Grain, but that she no longer has a recourse to recover the balance of her asset division payments through the liquidation of the Debtor's interest in Wimbledon Grain because an involuntary petition in bankruptcy was filed against Wimbledon Grain on August 21, 2003. She argues that she is entitled to some security to secure the payment of the nondischargeable asset division payments and suggests that such security could be restored by the imposition of a constructive trust on the Debtor's partnership interest in Hoggarth Bros., an asset of the Debtor's estate. However, it is not within the province of the United States Bankruptcy Court to add to or substitute provisions in a state court divorce judgment, and Patricia Hoggarth is left to return to the state court to seek modification of the divorce judgment.

 Lastly, the Debtor asserts that he made a $4,500.00 partial payment on the spousal support obligation through the proceeds of a 1998 income tax refund per order of this Court, and that $4,500.00 must be deducted from the total amount owing on the spousal support obligation. Indeed, this Court granted relief from the automatic stay to Patricia Hoggarth to the limited extent that she was entitled to receive one-half of the proceeds of a 1998 income tax refund. However, the Debtor did not present any evidence that such payment has been made. Further, Patricia Hoggarth's concession that she might have received spousal support payments through March 2002 is insufficient to prove as much without substantiating evidence.

The best evidence available to the Court shows that the Debtor ceased making payments after December 2001 on the spousal support and asset division obligations and the Court is unable to credit him for any additional payments averred but not proved.

### III. CONCLUSION

Based upon the foregoing, the Court concludes that Kenneth B. Hoggarth's obligations to Patricia A. Hoggarth under the judgment entered in connection with the parties' divorce to make monthly spousal support and asset division payments are in the nature of alimony, support, or maintenance and are therefore nondischargeable under section 523(a)(5).

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**